This is number 19, 1800, Intellectual Ventures II LLC v. Aisin Seiki Co., Ltd. Again, Mr. Stewart. Thank you again, Your Honor. It's not been a very long time since I've seen you. We have to stop meeting this way. Okay, this is another appeal of an IPR, and I'd like to focus my attention this time, or focus your attention, excuse me, this time on two of the claim construction issues that are before the court. And those are the meaning of the phrase pathway in the monolithic body, and the meaning of the phrase fluid cooled, and whether it's a limitation at all. Not the in-claim construction? Pathway in the monolithic body is one of the two claim construction issues I would like to address. Okay, and don't you have, tell me why the following is wrong, that you're essentially arguing that this claim language should have the same meaning as the more narrow claim language that was basically an issue in the case we were just listening to about embedded in and words like that that aren't, that are narrower on their face than in, than just in by itself. I would agree with you that we're arguing that the construction should be essentially the same. I would disagree that the word in is not inherently as narrow. What I would concede is that the word in is more ambiguous than the phrase embedded in. And so as we explained in the briefs, one of the ordinary meanings of the word in is embedded in or encapsulated in. And so what the court and the board would need to do is look through the specification and file history to see which ordinary meaning was intended. What do you do, I'm sorry, what do you do about figure 16 though, where it's only surrounded on at best three sides? Figure 16 you're referring to the example where there is a kind of a groove or a trench cut into the side of the. Yes. Yeah. And the top is some sort of aluminum. Yeah, that's, that wouldn't be an embodiment except for the covering over it. Otherwise we believe that would be excluded from the claim. Right, but the aluminum is not part of the, I forget what. The monolithic body. The monolithic body. No, the aluminum is not part of the monolithic body, but something, at least in our view, and. It's a very small piece of a figure, but there it is. Yes, there it is. So you're trying to argue that that essentially was something that you disclosed but didn't claim? We think the better reading is that claim 16, or excuse me, figure 16, is claimed because of the covering over the, over the groove or cut out that you see there at number 338, and also, yeah, 338 at both points. But it wouldn't be in the walls of the monolithic body as you contend. I do think it's cut into the walls of the monolithic body and it is sealed off. We certainly, you know, as an alternative, we could consent and agree to a narrower claim construction in which figure 16 would be an unclaimed embodiment. But we do think that the better reading of it is that it is, it does fall within the scope of the claim. Because your view of the embedded meaning you want to give to in doesn't require complete enclosure by the... Not by the monolithic body, but enclosure by the monolithic body. A deep enough trench inside the monolithic body, even if the topper side or something of the trench would still qualify in your view. Well, as long as it's closed off. Though closed off by something other than the monolithic body. That's correct, Your Honor. And again, that's, I think, an issue that doesn't necessarily need to be resolved for this appeal. And we would agree as an alternative that figure 16 would simply be an unclaimed embodiment. So if your analogy about guns in the wall of a fort, you would say that even if the gun was just in a, it was placed into a little groove, as long as you put a top over it, that it would be in the wall? Yeah, as long as it was sealed off. It doesn't have to be sealed off by the same cement or bricks that are forming the wall. It could be sealed off by wood or something else. That would be our position. Yes, Your Honor. And I think, frankly, your questions have fairly covered most of what I had to offer on the meaning of the word in. How do you apply that construction to the Amita reference? The Amita reference. Let me try to do that more quickly, Your Honor. The Amita reference is simply a gap or space that's located next to the monolithic body. And then there is the rotor and other components that are in the middle of the gap. But it's still simply fluid flowing through a gap next to the monolithic body. If the court has no further questions on in, I'll move on to fluid cooled. Fluid cooled is relevant only to the Bram grounds. And fluid cooled appears in the preamble, and it's a limitation for two reasons. The first is that a preamble is limiting if the specification makes clear that the preamble language is part of what the inventors actually invented and intended to encompass within the claim. And that's from Corning Glass Works from this court and many other cases as well that I could cite to the court. And here the specification leaves no doubt that the inventors limited their work to fluid cooled devices and intended their claim to cover only fluid cooled devices. Even the field of the invention in the specification is limited specifically to fluid cooled devices. And this pattern is repeated throughout the entire specification in which the inventors single-mindedly... First of all, I'm not convinced that under Corning and the other cases that a change in structure is essential. But even if it is, fluid cooled implies that there is some mechanism in the structure for cooling the device through use of a fluid. There has to be a structure that does that. Here it is, it's the heat transfer pathway which is expressly recited in the body, but it adds the fact that that is in fact a structure for carrying cooler fluids, fluids that are going to cool the motor rather than some other type of fluid. And the second reason that the preamble here, the phrase fluid cooled is limiting, is that the term fluid cooled provides an antecedent basis for the terms fluid cooled motor and fluid cooled device. Under settled case law of this court, that antecedent basis provides a basis for concluding that the preamble term is limiting. But isn't your argument not just that it has to have a cooling function, but that it has to have a meaningful cooling function? I mean, how are we supposed to say how much cooling is supposed to be done? Yeah, well, I don't think the word meaningful is our favorite word. I think I would characterize it as more than de minimis cooling, and I think there is precedent from this court and from the lower courts as well that words like de minimis cooling and similar terminology is a meaningful claim limitation. And can be applied by one of skill in the art. The best example from this court that I have is the Bausch and Lomb versus HydroCurve case, 796F3-443. And in that case the claim was directed to a contact lens with a smooth surface. And the defendant came forward with evidence that the surface of its contact lens when viewed under a scanning electron microscope was very rough looking. And the court said that's not really the relevant test. The relevant test is whether the device is smooth enough to sufficiently serve the inventor's purpose. And so a de minimis amount of roughness visible only under a scanning electron microscope was insufficient. So here I would say similarly that if the accused product, if we were in litigation, has a heat transfer property or a fluid cooled property enough to serve the inventor's purpose of cooling the motor so that it doesn't overheat, then we would be in a situation where it falls within the claims. But if you're in the Bram situation where every effort is made to avoid imparting heat into the blood in the artificial heart, then you're not in a fluid cooled situation. You're in quite the opposite situation. The Bausch and Lomb versus HydroCurve case didn't actually use the phrase de minimis. There is a very recent district court case that I can cite to the court that used precisely that language. It was Edge Systems versus Venus Concept out of the Southern District of Florida in late 2019. And there the claims called for abrading the skin. And the court held that this required the removal of more than a de minimis amount of skin. Because obviously if you just brush your face with your hand, you're going to remove some de minimis amount of skin. But the claim required more than that. If the court has no further questions on either fluid cooled or in, I'd like to reserve the rest of my time for rebuttal. Okay. Thank you. Thank you very much, Your Honor. Mr. Ratchett. Thank you, Your Honor. May it please the court. This appeal addresses three references, Ameda, Stefan, and Bram. Each of those references supports an independent ground front patentability. What about the patent would support, other than figure 16, would support the notion that in the wall doesn't have to mean, you know, I'm sorry. I'm going back to his example. In the monolithic body doesn't have to mean in it. Inside of it. Yeah. Perhaps. Well, figure 16 does that, of course. But the other piece of evidence that the board picked up on, it wasn't addressed in the context of Ameda so much as it was Stefan, was what the parties called the pump embodiment. And there it was actually the appellant who provided a colored and labeled diagram. That's on page 60 of the blue brief. And also it comes from the patent under story ply at appendix page 631. There, what they've labeled as the monolithic body includes a housing shell. And the fluid pathway is bounded by the interior of that housing shell. And the board picked up on that and even said, denying one of the requests for rehearing, that the purple fluid pathway is a void bounded by the inner walls of the pump housing. It's not inside of the walls of the pump housing. So figure 16 and what the parties are calling the pump embodiment are the two primary pieces of evidence to show that the word in is not limited to inside the walls of. And the board, in addressing this claim construction, basically treated the appellant's arguments as though it were a claim construction, even though they never articulated this in the walls of claim construction argument until the request for rehearing. But the board said, okay, we'll look at this as a claim construction issue and said, there's nothing in the language of the claims that precludes the empty space bounded by the monolithic body. And the board also pointed out that the claims don't recite a specific location of the fluid pathway in the monolithic body. It just has to be in the monolithic body. And in fact, the claim doesn't even require the presence of walls. The entire patent doesn't say anything about walls. There was never any lexicography by the applicant or any disclaimer during prosecution to narrow the meaning of the word in. And another point I'd like to make, Your Honor, is even if we adopted appellant's very narrow claim construction of the term in and read that extra language into the claims, the discharge port and the empty space intake port of Ameda both go into and through the wall of housing. There's no dispute about that. And Ameda even says, this is appendix page 2655, paragraph 16. Ameda says, the discharge port 14 is formed on the joining surfaces of the casing cover 11 and the molded stator A. Thus, it's clear that the discharge port is formed by features that are in the monolithic body. Those are structural features that are formed into the monolithic body to allow fluid to go right through the wall of the monolithic body. Why isn't fluid cooled in the preamble important for understanding what heat transfer fluid is? Because that's just a feature or benefit of the invention. It adds nothing to the structure. Well, what is heat transfer fluid then? Well, the appellant's actually defined that and the board adopted that construction. Now they're unhappy with it, that heat transfer fluid is just a fluid capable of transferring heat. I think the word is capable was in their construction. The patent itself admits that fluid cooling is prior art. This is at the bottom of column one of the patent and it's actually quoted in the blue brief at page five. The patent states, it was well known that a fluid in the environment of the device can be used to aid cooling. So fluid cooling in the preamble is just a benefit or feature of the invention. The invention is to improve fluid cooling in a manner that they thought hadn't been done before, which was to use a monolithic body of plastic to both encapsulate the conductor, which is the part that's getting hot, and to also form a fluid pathway. That's the invention and that's the structure that they claimed. This goes to one of the guideposts from Catalina Marketing. This is also quoted in the Intertool case. The preamble generally is not limiting when the claim body describes a structurally complete invention such that the deletion of the preamble phrase does not affect the structure. Deleting fluid cooled doesn't change the structure at all because it's not structural. IV Repellent even admitted, because they were trying to address 35 U.S.C. section 112 paragraph F in footnote four on page 82 of the blue brief, they even admitted that the claims recite specific fluid cooling structure. Secondly, Your Honor, even if we were to limit the claims to fluid cooled, which would contradict all the guideposts from Catalina, but assuming that that's how the claim is construed, there's unrefuted testimony from Dr. Trumper that a blood pump does, in fact, use fluid cooling to cool the device. Dr. Trumper has experience with magnetically levitated blood pumps like Bram. That's from appendix page 3558. He said in his declaration that the blood passing through the pump cools the pump by convection, carrying heat away from the pump. So he provided an explanation as to how it's fluid cooled. And this also came up again in his deposition, where he testified that heat will always be convected away by the blood flow. The only thing that appellants have said in response is that Bram must be cooling some other way, but they never explain what that way is, and they never address Dr. Trumper's testimony that all blood pumps are fluid cooled through convection. If you have no more questions about Bram, I'd like to turn to Stephon. I have no more questions on Bram. The issue with Stephon was the fact that he was a man who had a lot of experience with The appellant's characterization of the claim construction channel. The board agreed with the appellants that it brought us reasonable interpretation of the claim term pathway, his channel. The board disagreed with the appellants that a channel has these special characteristics that confine flow to a specific route and avoid turbulence or chaotic or random patterns. The board looked at the intrinsic record and didn't find these further features or limitations present in the claims or in the specification. The board looked at extrinsic evidence, such as the testimony of appellant's expert, Dr. Beeman. They discredited that testimony because he provided no factual basis for his opinion that a pathway is a structural channel that confines flow to a specific route with no turbulence. And appellants never contested once the evidence that appellees put forward that all fluid pathways have turbulence. That's from the Vennard book and it's discussed at appendix page 1402. The board also looked at the pump embodiment with respect to the Stephon reference and determined that appellant's own statements about the pump embodiment undermined its position that a channel restricts flow to a specific route with specific fluid dynamic features. But the board was a little confused about the pump embodiment when it was pointing to the patent, right? I'm not necessarily sure that that's correct, Your Honor. But what resolves that issue, if there was any confusion, it's resolved by the fact that appellants are the ones who provided the colored and labeled diagram of the pump embodiment. And that shows that the purple fluid pathway gets wider and gets narrower. It has an impeller that's spinning in the middle, creating turbulence. And it's very similar to the Stephon reference in that the pathway changes its width and also has an impeller that's spinning in the middle of it. How does turbulence equate to nonlinear? I don't believe there's any relation, Your Honor. Nonlinear means that the, and this isn't grazed on appeal, but it means that the shape can't be formed by a simple core pin. So when you have a housing or a monolithic body with curves in it, that would be nonlinear. Because it can be molded without the use of a simple, or it can't be molded with a simple core pin. Now, in the great brief, page 29, appellants have said that, well, we don't need this turbulence limitation in the claims. It's irrelevant to appeal. Well, if that's true, then Stephon has a funnel section 22 and funnel segments 44 that meet the limitation of a fluid pathway in the monolithic body. The expert appellant, Dr. Beeman, again, he had an opinion that characterized Stephon's pump housing as a chamber. The board gave that little weight because he failed to even address the funnel segments 44 that are formed into the lower housing half and go right through it. Those funnel segments are spaced between solid plastic shutoff segments. The board pointed that out as well. So if there are no more questions about the prior references, Your Honors, I'll just conclude briefly. If the board got it right, there's no reason to read extra features or limitations that appellants want into the claims. And even assuming that any plausible version of appellant's claim construction is adopted, there's still substantial evidence of unpatentability. Thank you. Thank you, Mr. Stewart. Thank you, Your Honor. I'd like to start by addressing the figure from the Prior Art 737 patent on page 60 of our opening brief. That figure, even with the annotations and coloring, is not the patented invention. That's the Prior Art 737 patent. The patent under consideration here explicitly states that this figure must be modified in order to practice the claimed invention. And the modifications include creating a monolithic body out of the two disparate portions that are shown as the dark green housing and then the lighter green interior portions. So those two things must be converted from separate components into a monolithic body. And secondly, lost wax casting or some other method must be used to actually create holes through that monolithic body in order to practice the invention. So I think there's some misinterpretation or misunderstanding about what's shown in the figure on page 60. Secondly, with respect to the Umeda reference, what was described to the court as a pathway, the discharge port of Umeda, is actually, first of all, nonlinear, and the claims call for a nonlinear pathway. And secondly, the discharge port is simply an outlet, which is a separate claim limitation. It's not actually the nonlinear pathway called for by the claims. With respect to the meaning of the term pathway or channel, the counsel is correct that we're no longer pressing on appeal, that no turbulence can appear in the channel or pathway. But that does not mean that Stefan satisfies the in the monolithic body limitation. It's simply not in the monolithic body. It is, again, next to the monolithic body, passing along the walls of the monolithic body rather than in the walls of the monolithic body. And there was also a mention briefly of the waiver argument, that we didn't address these issues until our petition for rehearing before the board. And we went through great lengths to explain in our opening brief exactly what the procedure was below and what happened, what arguments we made every step of the way. And we think there can be just no issue that there's no waiver concerns here. So if the court has no further questions, I will rest with 11 seconds left. Thank you. Thank you, Ruth. The case is taken under submission. Thank you.